FILED
SUPERIOR COURT
OF GUAM

2021 JAN -7 PM 3: 43

CLERK OF COURT
BY:_____

**IN THE SUPERIOR COURT OF GUAM**

WISE OWL ANIMAL HOSPITAL,

Plaintiff,

vs.

ALFREDO BUSTAMANTE,

Defendant.

**Superior Court Case No. <u>CV0981-17</u>**

**DECISION AND ORDER RE MOTION
FOR SUMMARY JUDGMENT**

The Court here considers Plaintiff Wise Owl Animal Hospital's ("Wise Owl") Motion for Summary Judgment. Upon reviewing the briefs and the supporting material, the Court GRANTS summary judgment in Wise Owl's favor on Defendant Alfredo Bustamante's counterclaims for an accounting, invasion of privacy, and intentional infliction of emotional distress ("IIED").

## I. PROCEDURAL BACKGROUND

Wise Owl initiated this lawsuit in Small Claims Court for amounts owed for veterinarian treatment. *Wise Owl Animal Care v. Bustamante,* SD0584-15. Bustamante answered and counterclaimed for sums in excess of $10,000, which removed the case to this Court. Def.'s Answer and Countercl. (Sep. 26, 2017). The Court then partially stayed this matter pending an arbitration under Guam's Medical Malpractice Mandatory Arbitration Act. Dec. and Order (Apr. 5, 2018).

The matter underwent and completed arbitration in February 2020. Not. Appeal (June 26, 2020). Wise Owl has now appealed the arbitration outcome and seeks a trial de novo. Not. Appeal. This Court has scheduled the trial de novo to begin on January 28, 2021. Order Setting Trial Schedule (July 31, 2020). In the meantime, Wise Owl has moved for summary judgment

ORIGINAL

on Bustamante's counterclaims for an accounting, invasion of privacy, and intentional infliction of emotional distress.

## II.   UNDISPUTED AND DISPUTED FACTS RELEVANT TO THE COUNTERCLAIMS

In 2015, Bustamante's dogs, Rex and Lucky, suffered severe injuries at the hands of one of Bustamante's employees. Decl. Alfredo Bustamante ¶ 3 (Oct. 19, 2020). The incident was caught on video and attracted local news and social media attention. Decl. Alfredo Bustamante ¶ 5; Mem. Points & A. in Support of Pl.'s Mot. Summary J., App. 1 (July 31, 2020) (media articles).

Bustamante brought the dogs to Wise Owl for treatment. Decl. Alfredo Bustamante ¶ 4. Bustamante had been a long-standing Wise Owl customer. Decl. Alfredo Bustamante ¶ 9. Bustamante informed one of Wise Owl's veterinarians, Dr. Joel Joseph, that the situation caused him emotional distress. Decl. Alfredo Bustamante ¶¶ 5, 6.

Wise Owl posted an article concerning Bustamante's dogs on its website:



### Helping Abused Animals
*September 14, 2015*

Guam was heartbroken by a viral video of animal abuse towards two loving dogs on our island. The owner was not aware the abuse was taking place and after being informed, immediately called the police and brought the dogs into Wise Owl for care.

Thank you to all the concerned citizens who reached out to us about this case. We are happy to report the dogs are making great recoveries at our clinic.

**More on the Case here**



Decl. Benjamin Schiff, Ex. 1 (July 31, 2020).[1] In making this post, Wise Owl intended to "inform the public as to the condition of the dogs." Decl. Benjamin Schiff ¶ 6. Bustamante also

---

[1] Wise Owl's motion contends that if a user clicked on "More on the Case here," he would be linked to a Pacific Daily News article. Mem. Points & A. in Support of Pl.'s Mot. Summary J. at 13. However, Wise Owl provided no admissible evidence to prove such link.

ORIGINAL

posted about the incident on his social media and referenced the dogs' treatment at Wise Owl. Decl. Benjamin Schiff, Exs. 2, 3.

According to Bustamante, "Wise Owl also placed donations soliciting money from Wise Owl's clientele." Decl. Alfredo Bustamante ¶ 7. Wise Owl has not provided Bustamante with an accounting of the donations received, however, it credited Bustamante's bill with $184.00 in donations. Decl. Alfredo Bustamante ¶ 7; Decl. Joel Joseph ¶¶ 11-12 (July 31, 2020).

The parties contest whether Bustamante consented to Wise Owl's reference to the incident on its website. Bustamante claims that Wise Owl did not seek Bustamante's consent, Decl. Alfredo Bustamante ¶ 10, while Wise Owl contends that he did consent, Decl. Benjamin Schiff ¶ 3.

Finally, Bustamante claims that Dr. Joseph wrote a letter on October 15, 2015, which accused Bustamante of failing to take care of Rex. Decl. Alfredo Bustamante ¶ 13.

## III.   LAW AND DISCUSSION

### A. Standard for Summary Judgment

Under Guam Rule of Civil Procedure 56(c), summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Summary judgment is proper only where there is no genuine "dispute as to any material fact." GRCP 56(c). The "materiality" of particular facts is determined by the pleadings and the substantive law. *Anderson v. Liberty Lobby, Inc.*, 477 US 242, 248 (1986).

In responding to a motion for summary judgment, an adverse party may not rest upon mere allegations or denials of the adverse party's pleading. GRCP 56(e). Instead, the non-movant, by affidavits or otherwise, "must set forth specific facts showing that there is a

genuine issue for trial. If the adverse party does not so respond, summary judgment, if appropriate, shall be entered against the adverse party." GRCP 56(e). Also, the submitted affidavits must be made with personal knowledge and using facts that would be admissible in evidence." GRCP 56(e).

### B. Accounting

Wise Owl indicates that it credited Bustamante $184.00 for donations it received. Based on one communication from a third party, Bustamante believes at least $300.00 in donations was received. However, this statement is hearsay: Bustamante offers it to prove that Wise Owl received more than $184.00. GRE 801(c). To support his position, Bustamante was obligated to furnish a declaration or other evidence that directly establishes donation levels of greater than $184.00. GRE 802 ("Hearsay is not admissible"); GRCP 56(e).

Because Bustamante has not offered adequate evidence to create a genuine issue of material fact, the only admissible evidence before the Court is that Wise Owl received $184.00 in donations and credited that amount to Bustamante. Bustamante's request for an accounting has been satisfied by Wise Owl's evidence, and summary judgment on this count is GRANTED.

### C. Invasion of Privacy

The elements of an invasion of privacy claim under an appropriation theory generally has four elements: (1) use of the claimant's identity;[2] (2) appropriation of the claimant's name or

---

[2] Wise Owl disputes the first element: it argues that Bustamante cannot claim an invasion of a right to privacy when the invasion occurs to his dog. However, none of the cases cited by Wise Owl are squarely on point in support of that position. *Lawrence v. Ylla*, 55 N.Y.S.2d 343, 345 (App. Div. 1945), concerns at its core the contractual rights between a customer and a photographer hired to photograph the customer's dog. The case explains that whether a right exists depends on whether a photography contract exists. *Id.* at 345. The circumstances of *Lawrence*--particularly with respect to how the right to privacy was potentially created--appear too remote to be applicable here. Wise Owl also cites *Brill v. Walt Disney Corp.*, 246 P.3d 1099, 1104 (Okla. App. 2010), but that case concerned the right to privacy of an animated car. This Court also sees little relevance of *Flynn v. Higham*, 197 Cal. Rptr. 145 (Cal. App. 1983), which discussed a family member's right to claim an invasion of another family member's right to privacy. The Court has granted summary judgment for Wise Owl on the invasion of privacy counterclaim on other grounds, and finds that a discussion on the first element is not further necessary.

ORIGINAL

likeness to the other's advantage, commercially or otherwise; (3) lack of consent;[3] and (4) resulting injury. *Cross v. Facebook, Inc.,* 222 Cal. Rptr. 3d 250, 265 (Cal. Ct. App. 2017).

Wise Owl contends that because the medical condition of Bustamante's dogs was a matter of public concern, Bustamante cannot prove the second element of invasion of privacy. Under the second element, the claimant must show that the defendant took advantage of the claimant's image for commercial purposes. *See, e.g., Joe Dickerson & Associates., LLC,* 34 P.3d 995, 1001 (Colo. 2001); *Cross,* 222 Cal. Rptr. 3d 250; *Doggett v. Travis Law Firm, P.C.,* 555 S.W.3d 127 (Tex. App. 2018).

As a preliminary matter, the parties dispute whether the determination of a commercial purpose is a matter of law or fact. Wise Owl points to cases in which courts have made this determination based on the record before it on a dismissal motion or a summary judgment motion. For example, in *Joe Dickerson & Associates, LLC,* the Colorado Supreme Court determined the question to be a matter of law and an issue that courts may decide on summary judgment. 34 P.3d at 1003. A similar holding was referenced in *Raymen v. United Senior Ass'n, Inc.,* 409 F. Supp. 2d 15, 23 (D.D.C. 2006) when dismissing an appropriation claim: "Whether a communication is commercial or noncommercial is a question of law." On the other hand, Bustamante continues to maintain that whether Wise Owl had a commercial purpose is an issue of fact. However, Bustamante fails to cite any caselaw that supports his proposition.

In view of the authority before it, the Court will make a determination as a matter of law whether Wise Owl had a commercial purpose in publishing an article about Bustamante's dog on its website. To make that determination the Court must examine the content of the speech and analyze whether the speech proposes a commercial transaction. *Joe Dickerson & Associates, LLC,* 34 P.3d at 1004 (citing *City of Cincinnati v. Discovery Network, Inc.,* 507 U.S. 410, 422-23

---

[3] As noted in the section concerning facts, there is an issue of fact as to whether Bustamante consented to Wise Owl's publication. Summary judgment is nonetheless appropriate on this counterclaim on other bases.

(1993) (commercial speech proposes a commercial transaction)). As other courts have stated, the "core notion of commercial speech is that it does no more than propose a commercial transaction." *Hoffman v. Capital Cities/ABC, Inc.*, 255 F.3d 1180, 1184 (9th Cir. 2001); *Gionfriddo v. Major League Baseball*, 114 Cal. Rptr. 2d 307, 316 (Cal. App. 2001) (minor historical references to retired baseball players within league websites and documentary videos were distinct from advertisements as the primary message was not "buy").

The Court turns to whether Wise Owl took advantage of the photographs and information about Bustamante and the dogs on its website for commercial purposes. Advertisements constitute the primary method of commercial speech. *Abdul-Jabbar v. General Motors Corp.*, 85 F.3d 407, 409-10 (9th Cir. 1996) (use of former collegiate athlete's name in an advertisement violated his right to publicity). In this case, however, there is no explicit advertisement or request that a viewer engage in a commercial transaction.

The Court acknowledges that the website possesses inferences of a potential commercial purpose. For example, a viewer of the website may form an understanding that the owner of the infamously injured dogs chose to take them to Wise Owl and Wise Owl took such good care of the dogs that they are recovering. In this light, Wise Owl can be seen as commercially promoting its services. Indeed, the bolstering of one's image has been considered one way to prove a commercial purpose. *See* Restatement (Second) of Torts § 652C ("adding luster" to a business may constitute a commercial purpose).

However, commercial undertones are not the only consideration, particularly when the publication concerns a legitimate matter of public concern. *Joe Dickerson & Associates, LLC*, 34 P.3d at 1003; *Raymen*, 409 F. Supp. 2d at 23. Bustamante does not dispute the extent to which this incident gained widespread media attention and became a public interest issue. In fact, many of the articles feature interviews with Bustamante talking about the incident.

Given the public's interest in this incident and Bustamante's posting about the animals' care at Wise Owl, Wise Owl's mention of the incident overcomes any inference that Wise Owl intended a commercial benefit. Overall, the plain language of the website supports Wise Owl's position that it proposed no commercial transaction. Moreover, even if the website indirectly proposed a commercial transaction for Wise Owl's potential customers impressed by Wise Owl's care of Bustamante's dogs, the website "did more than" indirectly propose such a commercial transaction. Instead, it added information on a matter of public interest--the well-being of two brutally abused dogs. Accordingly, as a matter of law, Wise Owl's reference to Bustamante's pets was non-commercial.

Finally, as part of his counterclaim for the alleged invasion of privacy, Bustamante is required to demonstrate the value of the publication concerning him and/or his dogs. *See, e.g., Whisper Wear, Inc. v. Morgan*, 627 S.E.2d 178, 181 ("The measure of damages under a misappropriation of likeness claim is the advertising value of the use of the material in the manner and for the time it was appropriated."). A person's likeness must have some commercial or other value to prevail on an invasion of privacy appropriation claim. *Barnhart v. Paisano Publications, LLC*, 457 F. Supp. 2d 590, 596 (D. Md. 2006); Restatement (Second) of Torts § 652C cmt. c (1977) ("Until the value of the name has in some way been appropriated, there is no tort."). In his response to the Motion for Summary Judgment, Bustamante did not provide the Court with a valuation of either himself or his dogs. As stated in the Restatement, a mere publication is not enough to satisfy an appropriation claim: "No one has the right to object merely because his name or his appearance is brought before the public, since neither is in any way a private matter and both are open to public observation. It is only when the publicity is given for the purpose of appropriating to the defendant's benefit the commercial or other values associated with the name or the likeness that the right of privacy is invaded." Restatement



(Second) of Torts § 652C cmt. d. Absent evidence which establishes any sort of value attached to advertising Bustamante or his dogs, the Court finds that as a matter of law, Bustamante is unable to pursue his invasion of privacy counterclaim under an appropriation theory.

In summary, as a matter of law, Wise Owl's reference to Bustamante's dogs on its website did not constitute commercial speech. Additionally, Bustamante has not furnished proof of the value of the reference to his dogs. For those reasons, the Court GRANTS summary judgment in favor of Wise Owl on the invasion of privacy counterclaims.

### D. Intentional Infliction of Emotional Distress

IIED may be shown by proving: "(1) extreme and outrageous conduct by the defendant; (2) intention to cause or reckless disregard of the probability of causing emotional distress; (3) severe emotional distress, on the plaintiff's part; and (4) actual and proximate causation of that emotional distress." *Moylan v. Citizens Sec. Bank*, 2015 Guam 36 ¶ 77.

Bustamante's IIED claims allege that Dr. Joseph[4] made statements that he did not properly care for his dogs after surgery. Bustamante further claims that such statements caused him emotional distress. Wise Owl argues that such statements do not rise to the level of extreme and outrageous conduct. Bustamante counters that under the circumstances, Wise Owl's conduct approached outrageous conduct.

Wise Owl cites California caselaw to demonstrate that more egregious statements than those expressed here were determined to not be extreme or outrageous conduct. For example, Wise Owl cites *McMahon v. Craig*, 97 Cal. Rptr. 3d 555 (Cal. App. 2009) for the proposition that a veterinarian's lies to a customer about feeding his dog did not constitute extreme and outrageous conduct. In denying the IIED claim, the *McMahon* court relied heavily on the fact that the statements were not made in the presence of the plaintiff.

---

[4] Not briefed is the imputation of Dr. Joseph's statements to Wise Owl. For the purposes of this Motion, the Court assumes imputation.

It is unclear whether *McMahon* applies because the form and substance of the communications have not been established. Bustamante contends that he read an October 15, 2015 letter "from Dr. Joseph accusing me of failing to properly care for Rex." Decl. Alfredo Bustamante ¶ 13. That letter is not provided to the Court, however. In neglecting to provide that evidence, Bustamante fails to meet his Rule 56(c) burden of providing specific facts beyond allegations. The Court has no context of what the letter stated, to whom the letter was directed, and who received the letter. In turn, the Court cannot make a determination that the alleged statements satisfy the standard of extreme and outrageous conduct intending to cause emotional distress.

The Court therefore GRANTS summary judgment in favor of Wise Owl on the IIED claim.

## IV.   CONCLUSION

The Court GRANTS summary judgment in favor of Wise Owl on the counterclaims of accounting, invasion of privacy and IIED. This matter will proceed to trial on all remaining claims and counterclaims.

SO ORDERED this 7th day of January 2021.

**SERVICE VIA E-MAIL**
I acknowledge that an electronic copy of the original was e-mailed to:
M. Thompson
J. Cook
Date: 1/7/21   Time:
J. Thompson
Deputy Clerk, Superior Court of Guam

**HON. ELYZE M. IRIARTE**
**Judge, Superior Court of Guam**

Appearing Attorneys:
Mitchell F. Thompson, Esq., Thompson Thompson & Alcantara, P.C., for Plaintiff Wise Owl
     Animal Hospital
Jeffrey A. Cook, Esq., Law Offices of Cunliffe & Cook, for Defendant Alfredo Bustamante